COLE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. KRUPANSKY, J. (pp. 283-284), delivered a separate concurring opinion.
COLE, Circuit Judge.
Appellants AT & T Universal Card Services, Inc. (“AT & T”) and Citibank South Dakota, N.A. (“Citibank”) appeal the district court’s order that reversed a judgment of the bankruptcy court and determined that Appel-lee Benethel Rembert’s debts to Appellants were dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). For the following reasons, we AFFIRM the decision of the district court.
I.
Appellee Benethel Rembert has worked for Chrysler Motors Corporation as an hourly-wage factory inspector for over twenty-eight years. In 1993, Rembert encountered financial difficulties resulting from an automobile accident, which caused her to miss work for several months. Rembert’s financial difficulties were exacerbated when, between 1994 and 1995, her income was reduced by one-third because she was unable to work overtime. During this time, Rem-bert had an established credit card account with Citibank and opened two separate credit card accounts with AT & T.
Rembert’s financial woes continued. Between June 1994 and January 1995, Rembert incurred gambling losses of between $18,000 and $24,000, primarily at the Windsor Casino in Ontario, Canada. To finance her gambling, she withdrew thousands of dollars in cash advances from automated teller machines at the casino on her credit card accounts, including those with Citibank and AT & T. As a result of the heavy debts she had incurred by virtue of these withdrawals, Rembert obtained a second mortgage on her home in November 1994, in the amount of $28,000. Rembert used a significant portion of the loan proceeds to pay her credit card debts; on November 14, 1994, Rembert completely paid her Citibank balance of $5,936, and also paid a $3,051.86 balance on one of her AT & T accounts.
Despite her mounting losses and the second mortgage on her home, Rembert continued to gamble and withdraw cash advances. By January 1995, Rembert again owed substantial amounts on her Citibank and AT & T accounts. During that time, Rembert made additional payments of approximately $2000 to Citibank and approximately $1500 to AT & T. .
On April 20, 1995, Rembert filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, et seq. Thereafter, Citibank and AT & T initiated adversary proceedings against her, seeking a determination that Rembert’s debts to them were nondischargeable under 11 U.S.C. § 523(a)(2)(A). The two adversary proceedings were consolidated and tried together in the bankruptcy court.
At trial, Rembert testified that at the time she was obtaining cash advances for gambling, she believed that she would be able to win enough money to repay her credit card debts. There was no evidence indicating that she did not intend to repay the cash advances from Citibank and AT & T. Notwithstanding, the bankruptcy court found that Citibank and AT & T had established that, at the time Rembert obtained the eash *280 advances, she intended to defraud Citibank and AT '& T in connection with these debts. Accordingly, the bankruptcy court determined these debts- to be nondischargeable under § 523(a)(2)(A). The bankruptcy court based its finding of fraudulent intent on an objective analysis of both Rembert’s intent and ability to repay, concluding that Rem-bert: (1) did not intend to repay the debt; and (2) had reason to know that she would not be able to repay it.[1] In addition to determining that the debts were nondis-chargeable, the bankruptcy court entered judgment in favor of Citibank and AT & T in the amount of $6299.71 and $5323.77, respectively.
The district court reversed, finding that the bankruptcy court clearly erred because Citibank and AT & T had failed to establish that Rembert had the requisite fraudulent intent under ■§ 523(a)(2)(A) at the time she obtained cash advances. Citibank and AT &' T have timely appealed the judgment of the district court.
II.
“We review a bankruptcy- appeal differently than a typical .appeal from the district court. The bankruptcy court makes initial findings of fact and conclusions of law. The district court then reviews the bankruptcy court’s findings of fact for clear error and the bankruptcy court’s conclusions of law de novo.” Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.), 106 F.3d 1255, 1259 (6th Cir.) (citing Bankr. Rule 8013), cert. denied, — U.S. —-, 118. S.Ct. 65, 139 L.Ed.2d 27 (1997). We in turn, review the bankruptcy court’s findings of fact for clear error and the district court’s legal conclusions de novo. See id. (citing First National Bank v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 974 F.2d 712, 717 (6th Cir.1992)). “A factual finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. Ayen, 997 F.2d 1150, 1152 (6th Cir.1993) (citations and quotation omitted).
III.
Citibank and AT & T contend that Rem-bert’s debts to them should have been excepted from discharge under § 523(a)(2)(A). That provision of the bankruptcy code provides:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or any extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition.
In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably[2] relied on the false rep *281 resentation; and (4) its reliance was the proximate cause of loss. See Longo v. McLaren (In re McLaren), 3 F.3d 958, 961 (6th Cir.1993). In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Further, exceptions to discharge are to be strictly construed against the creditor. See Manufacturer’s Hanover Trust v. Ward (In re Ward), 857 F.2d 1082, 1083 (6th Cir.1988).
The focus in the present case is on the first two elements -of the McLaren test: material misrepresentation and intent to defraud. Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard, see Field v. Mans, 516 U.S. 59, 70-72, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995); thus, we must determine whether Rembert had a subjective fraudulent intent, based on her representations to Citibank and AT & T. In so determining, we first must consider the nature of those representations.
The use of a credit card represents either an actual or implied intent to repay the debt incurred. See, e.g., Chevy Chase Bank, FSB v. Briese (In re Briese), 196 B.R. 440, 449-50 (Bankr.W.D.Wis.1996); Chase Manhattan Bank v. Murphy (In re Murphy ), 190 B.R. 327, 332 (Bankr.N.D.Ill.1995); The GM Card v. Cox (In re Cox), 182 B.R. 626, 628 (Bankr.D.Mass.1995). Subject to more debate, however, is the issue of whether the debtor’s representation includes a representation that she has an ability to repay the debt. Compare Anastas v. American Savings Bank (In re Anastas), 94 F.3d 1280, 1287 (9th Cir.1996) (the representation made by the card holder in a credit card transaction is not that he has an ability to repay the debt), and AT & T Universal Card Services Corp. v. Feld (In re Feld), 203 B.R. 360, 367 (Bankr.E.D.Pa.1996) (“We therefore reject those cases that measure a debtor’s intention to repay by her ability to pay.”), with Mercantile Bank v. Hoyle (In re Hoyle), 183 B.R. 635, 638 (Bankr.D.Kan.1995) (debtor implied that he had ability to repay when he took out cash advances) and Bank One Columbus, N.A. v.. McDonald (In re McDonald), 177 B.R. 212, 216 (B.ankr.E.D.Pa.1994) (the act of using a credit card carries the implied representation that the debtor has the ability to repay the debt).
We believe that “the representation made by the cardholder in a credit card transaction is not that he has an ability to repay the debt; it is that he has an intention to repay.” Anastas, 94 F.3d at 1287. To measure a debtor’s intention to repay by her ability to do so, without more, would be contrary to one of the main reasons consumers use credit- cards: because they often lack the ability to pay in full at the time they desire credit. See Feld, 203 B.R. at 368 (citing Briese, 196 B.R. at 448). Further, the language of § 523(a)(2)(A) expressly prohibits using a “statement respecting the debtor’s or an insider’s financial condition” as a basis for fraud. As noted by the Ninth Circuit,
the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been, brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often would there be an unfounded judgment of nomdischargeability of credit card debt. > Rather, the express, focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt. A finding that a debt is non-dischargeable under 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law____ While we recognize that a view to the debtor’s overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, ... the hopeless state of a debtor’s financial condition should never become a substitute for an actual finding of bad faith.
Anastas, 94 F.3d at 1285-86 (citations omitted). Thus, we hold that the proper inquiry to determine a-debtor’s fraudulent intent is whether the debtor subjectively intended to repay the debt,
*282 We are not unsympathetic to Appellants’ claim that a subjective analysis of a debtor’s fraudulent intent is extremely difficult to establish. Clearly, debtors have an incentive to make self-serving statements and will rarely admit an intent not to repay. In particular, compulsive gamblers often will have a subjective (albeit often baseless) intent to repay their gambling debts with their “expected” winnings, which is fueled by the very nature of their addictions. Thus, a debtor’s intention — or lack thereof — must be ascertained by the totality. of the circumstances. See Feld, 203 B.R. at 367.
Some courts have adopted a nonexclusive list of twelve factors to consider when determining whether a debtor intended to repay the debt.[3] See, e.g., AT & T Universal Card Services v. Ellingsworth (In re Ellingsworth), 212 B.R. 326, 334-35 (Bankr.W.D.Mo.1997). Although we believe that “factor-counting” is inappropriate when applying a subjective standard, see Murphy, 190 B.R. at 334, the enumerated factors could help to determine the debtor’s state of mind when she represented her intention to repay. “What courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent. This determination will require a review of the circumstances of the case at hand, but not a comparison with circumstances (a/k/a/ ‘factors’) of other cases.” Id.
IV.
Turning to the present case, we conclude that the bankruptcy court erred by considering Rembert’s ability to repay, as well as her intent to repay. Focusing on Rembert’s intent to repay, there was no evidence presented to the bankruptcy court indicating that Rembert used the credit cards without intending to repay the Appellants. In response to questions from the bankruptcy judge, Rembert asserted that, at the time she took the cash advances from the Appellants, she thought that she would win enough money to pay her debts. Rembert did admit in hindsight that her belief that she would win enough to repay the Appellants was objectively unreasonable; however, Rembert’s admission would be relevant only to the extent that it indicated an intention on her part not to repay the Appellants.
Looking at the totality of the circumstances, Rembert’s conduct was entirely consistent with a subjective intent to repay Appellants. She took out a second mortgage on her home in the amount of $28,000 and used almost all the loan proceeds to pay her credit card debts. Thereafter, she continued to make substantial payments on her credit card debts to the plaintiffs during the time when she continued to gamble and lose. Even after she stopped obtaining cash advances on her Citibank and AT & T credit cards, Rembert made additional payments to them. These facts indicate that Rembert subjectively intended to repay her debts. The fact that Rembert later admitted that it probably was not reasonable to believe that she would win enough money to repay the Appellants does not indicate a subjective intent not to repay her debts in this case. Accordingly, under the totality of the circumstances, we conclude that the bankruptcy court clearly erred in determining that Rem- *283 bert possessed the necessary fraudulent intent for purposes of § 523(a)(2)(A).
We thus agree with the district court’s findings that at the time Rembert incurred the debts at issue she intended to repay them and believed that she would have the means to do so from her gambling winnings. Accordingly, the district court properly reversed the judgment of the bankruptcy court.
Because there was no fraudulent intent in this case, we need not consider the other elements necessary to establish actual fraud. Appellants failed to establish Rembert’s intent to defraud by a preponderance of the evidence; we therefore conclude that Rem-bert’s debts to Appellants were not subject to exception from discharge pursuant to § 523(a)(2)(A).
V.
For the foregoing reasons, we AFFIRM the district court’s order reversing the judgment of the bankruptcy court.

. The bankruptcy court concluded that
[t]he Debtor testified here today that at the time she incurred the debts at issue, using these credit cards primarily for gambling pur- ' poses — she expected and knew that the only way she would be able to repay them was through gambling winnings. She also recognizes now, and it is, of course, objectively true, that there is not a reasonable expectation [of . repaying the debts through gambling].
She may have hoped in her heart of hearts that she would be able to repay, but she knew that it was not objectively realistic, or real [,]or reasonable to have such an expectation, and therefore, that she would not have the ability or intent to repay.
J.A. at 673-74.

. Under the Supreme Court’s decision in Field v. Mam, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), this subjective "justifiable” reliance standard was incorporated into the test for fraudulent intent under § 523(a)(2)(A). Previously, in the Sixth Circuit, ■ creditors had to satisfy an objective "reasonable” reliance standard under § 523(a)(2)(A).

. These factors are: (1) the length of time between the charges made and the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases were made for luxuries or necessities. See Citibank South Dakota, N.A. v. Dougherty (In re Dougherty), 84 B.R. 653, 657 (9th Cir. BAP 1988) (citing Sears Roebuck and Co. v. Faulk (In re Faulk), 69 B.R. 743, 757 (Bankr.N.D.Ind.1986)), abrogated on other grounds, Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It should be noted that even the Ninth Circuit, which decided Dougherty, has recognized that the twelve-factor test has "been criticized because it does not consider all the common law elements of fraud, particularly misrepresentation and reliance." Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1088 (9th Cir.1996) (citing The GM Card v. Cox (In re Cox), 182 B.R. 626, 637 (Bankr.D.Mass.1995)).