**In re Jacquelynn M. SHARTZ, aka Jackie Shartz, aka Jacquelynn Shartz, Debtor.**

**PROVIDIAN BANCORP, successor in interest to First Deposit National Bank, Plaintiff–Appellant,**

v.

**Jacquelynn M. SHARTZ, aka Jackie Shartz, aka Jacquelynn Shartz, Defendant–Appellee.**

**BAP No. 97–8060.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Submitted April 1, 1998.

Decided and Filed June 11, 1998.

Lee R. Kravitz, on brief, Cleveland, OH, for Appellant.

Jacquelynn Shartz, Willowick, OH, pro se.

Before LUNDIN, RHODES, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

Jacquelynn Shartz lost her employment in April, 1995. She then used credit cards to maintain daily living expenses and mortgage payments. She made minimum payments and paid off balances on individual credit cards by obtaining cash advances from other credit cards. Providian Bancorp asserts that Shartz's actions are fraudulent and its debt should not be discharged. The bankruptcy court held that Providian failed to meet its burden of proof and dismissed Providian's complaint. The Panel affirms.

## I. ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court erred in dismissing Providian's complaint for nondischargeability.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). "Determinations of nondischargeability under § 523(a) are final orders for appeal purposes." *National City Bank v. Plechaty (In re Plechaty)*, 213 B.R. 119, 121 (6th Cir. BAP 1997) (citations omitted).

Findings of fact are reviewed under the clearly erroneous standard. FED. R. BANKR.P. 8013; *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 219 (6th Cir. BAP 1997). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Mathews*, 209 B.R. at 219 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

## III. FACTS

In October, 1994, Jacquelynn Shartz, Appellee, returned a short form credit card application to Providian Bancorp, Appellant. In making its decision to offer Shartz a credit card account, Providian asserts that it relied on credit reports, conversations with Shartz and verification of Shartz's income. At that

time, Shartz had an excellent credit record and was earning approximately $46,000 per year. Her credit report disclosed approximately $8,000 in revolving debt.

In April, 1995, Shartz was laid off. Although the record is not clear on the exact timing or the amounts, it appears that from then until some point before she filed bankruptcy in August, 1996, her total credit card debt then increased to, and remained at, approximately $67,000, including approximately $12,500 owed to Providian.

After Shartz was laid off, her only income was $240 per week in unemployment compensation through October, 1995. After her layoff, she used cash advances to maintain current payments on her Providian account and for living expenses. On November 27, 1995, Shartz paid off the Providian account balance of $2,609 through an advance on another credit card. This was her last payment on her Providian account. However, from then until January, 1996, she borrowed $12,500 on the Providian card, which remained due when she filed bankruptcy. In January, 1996, Shartz stopped using her credit cards.

On August 23, 1996, Shartz filed a Chapter 7 bankruptcy petition. Providian filed a complaint to determine the dischargeability of its debt, alleging fraud under 11 U.S.C. § 523(a)(2)(A). Following trial, the bankruptcy court dismissed Providian's complaint on the grounds that Providian had failed to meet its burden of proof.

## IV. DISCUSSION

Bankruptcy Code § 523 controls the dischargeability of a debt when a creditor alleges false pretenses or false representation:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

■ 11 U.S.C. § 523(a)(2)(A). The creditor has the burden of proving by a preponderance of the evidence that a debt is nondischargeable under § 523(a)(2)(A). *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

> [A] creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998) (footnote omitted) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993)).

The bankruptcy court found that Providian did not meet its burden of proving these elements. Specifically, the bankruptcy court found that Providian did not present evidence proving that Shartz made either a false pretense or a false representation. *Providian Bancorp v. Shartz (In re Shartz)*, Case No. 96–14564, Adv. No. 96–1399, slip op. at 5 (Bankr.N.D.Ohio May 7, 1997).

In its brief, Providian argues that "the use of a credit card or the taking of a cash advance carries with it an implied representation to the merchant or lending institution that the account holder has both the present intent and ability to pay for such expense." Providian further asserts that because Shartz did not have sufficient income to pay for the charges she was incurring, the representation that she had the intent and ability to repay the debt was knowingly false. To prove Shartz's intent to deceive, Providian relied on Shartz's use of cash advances from credit cards to make payments on other credit cards while she was unemployed.

The Sixth Circuit recently clarified that "[t]he use of a credit card represents either an actual or implied intent to repay the debt incurred." *Rembert*, 141 F.3d at 281. How-

ever, the court noted that use of a credit card does not imply that the user has the present ability to repay the debt. *Id.* Rather, the court held that fraudulent intent must be determined from the totality of the circumstances and should not be implied solely based on use of a credit card when there is no immediate ability to repay. *Id.* at 281–82.

In *Rembert,* the debtor used cash advances on her credit card to fund gambling trips. After incurring gambling losses of between $18,000 and $24,000, the debtor obtained a second mortgage on her home to pay her credit card debts, but continued to obtain cash advances to gamble. At trial, the debtor "testified that at the time she was obtaining cash advances for gambling, she believed that she would be able to win enough money to repay her credit card debts." *Id.* at 279. The bankruptcy court found that the debtor intended to defraud the credit card issuers because the debtor had reason to know she would not be able to repay the debt. The district court reversed and the Sixth Circuit affirmed the reversal, holding "that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *Id.* at 281. Fraudulent intent cannot be implied simply based on an inability to repay the debt. *Id.* The Sixth Circuit noted that "there was no evidence presented to the bankruptcy court indicating that Rembert used the credit cards without intending to repay the [credit card issuer]." *Id.* Given the debtor's testimony regarding her belief that she would win enough to repay the debt and the fact that she took a second mortgage in an attempt to repay the debt, the court determined that the debtor subjectively intended to repay the debt. *Id.* at 282–83.

In this case, Shartz used cash advances on her credit cards to maintain payments and pay off balances on other credit cards, while she was unemployed. However, Shartz also asserted at trial that "when [she] was unemployed [the debt] merely snowballed, but [her] only intention was to find a decent job." Shartz explained that about $6,000 of the debt was an investment in a personal business that failed. Shartz testified that she did not use her credit cards to take vacations or to buy furs, jewelry or any extravagant purchases. Rather, she used her credit cards to "pay [her] bills and keep [her] credit in tact. [sic]" In response to her attorney's question regarding how she expected to be able to repay the debt, Shartz responded:

> Well, the whole situation really snowballed. But like I said, I wanted to pay my bills like I always did, because I worked hard all my life to keep my credit in tact. [sic] I said I was going to pay them off if I got a new job. I would have no problem making arrangements with my creditors. They all wanted to work with me—or most of them did. I ended up—I talked to Consumer Credit to try to make arrangements with them, but I didn't make enough money. Legal Aid said I made too much money. And I still didn't file bankruptcy right away, because I'm a very optimistic person, and I still thought I would get a better job.

These facts are similar to the facts of *Huntington National Bank v. Lippert (In re Lippert)*, 206 B.R. 136 (Bankr.N.D.Ohio 1997). In *Lippert,* the debtor used advances from credit cards to pay balances in full on other cards. The debtor also used his credit cards to pay for his wedding while he was insolvent. Although the debtor had been unemployed for nine months, he was diligently searching for a new job. The court held that the debtor's actions simply indicated an attempt "to tide [himself] over during a difficult time" and not "a final splurge prior to writing off his debt in bankruptcy." *Id.* at 141.

This case is unlike *American Express Travel Related Services Co., Inc. v. Hashemi (In re Hashemi)*, 104 F.3d 1122 (9th Cir. 1996) and *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082 (9th Cir.1996). In *Eashai,* the debtor used 26 credit cards to maintain minimum payments, and ran up debt of over $100,000 after he became unemployed. Part of the debt included a gambling spree and a trip to Pakistan. *Eashai,* 87 F.3d at 1085–86. In *Hashemi,* the debtor financed a six-week trip to Europe at a cost of more than $60,000, even though he already owed over $300,000 in credit card debt. Upon returning home, the

debtor filed for bankruptcy. *Hashemi,* 104 F.3d at 1124. The court determined that the debtor had attempted to have "a last hurrah" at the creditor's expense. *Id.* at 1126. In both of these cases, the debt was determined to be nondischargeable.

■ In this case, Shartz testified to an intent to repay her debt when she became employed. During the time that she used her credit cards to maintain balances on other cards and to pay daily living costs, she was actively seeking employment. Part of the debt incurred was an investment in a home business. The bankruptcy court stated, "Of further significance is the undisputed fact that there has been no showing the Debtor purchased any luxury goods or services with the charges or advances made during the subject period." *Shartz,* slip op. at 5. The totality of the circumstances indicates that Shartz was attempting to tide herself over during difficult times, rather than to have "one last hurrah" at the expense of her creditors. The bankruptcy court found that Providian failed to prove by a preponderance of the evidence that Shartz did not intend to repay the debt. Based upon the entire record, the Panel is not left with a definite and firm conviction that a mistake has been committed.

## V.  CONCLUSION

The bankruptcy court's finding that Providian failed to prove that Shartz did not intend to repay her credit card debt is not clearly erroneous. Therefore, the order of the bankruptcy court dismissing the nondischargeability complaint is **AFFIRMED.**