**In re Joseph A. FERRO and Kara Marie Ferro, Debtors.**

**Capital One Bank, Plaintiff,**

**v.**

**Joseph A. Ferro and Kara Marie Ferro, Defendants.**

**Bankruptcy No. 02–45919–R. Adversary No. 02–4776.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

April 25, 2003.

Kimberly Redd, UAW GM Legal Services Plan, Warren, MI, for Debtors.

Charles Taunt, Birmingham, MI, trustee.

*Opinion*

STEVEN W. RHODES, Chief Judge.

Capital One Bank brought this adversary proceeding to determine the dischargeability of the debt owed to it by Joseph and Kara Ferro. Capital One as- serts that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) because the Ferros did not have the intent to repay at the time the debt was incurred. The Court conducted a trial on December 19, 2002 and took the matter under advisement. The Court now concludes that Capital One has established by a preponderance of the evidence that the debt is nondischargeable.

I.

In December 2001, Capital One issued the Ferros a Mastercard credit card. Capital One solicited Kara Ferro to open a Mastercard by sending a "quick application." Mrs. Ferro asserts that she initially disregarded the application, but filled it out after being prompted by a solicitation phone call by Capital One. At the time of the application, Mr. Ferro had been unemployed for ten months. Prior to his unemployment, the Ferros' highest annual income had been $70,000. On the application, the Ferros stated that their combined annual income was $108,000. Mrs. Ferro asserts that the telephone solicitor urged her to speculate what their income would be under the best circumstances and state that income on the application. After the credit card was issued, the Ferros transferred $16,700 in balances from other credit cards. Additionally, the Ferros charged $1,198.07 on the card between December 26, 2001 and January 25, 2002. They made one payment on the balance in the amount of $600. On March, 12, 2002, the Ferros filed a chapter 7 bankruptcy petition. On that date, they owed Capital One $17,442.13.

II.

11 U.S.C. § 523(a)(2)(A) addresses the dischargeability of a debt when a creditor alleges fraud, false pretenses or false representation:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2)for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A)false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

■ The creditor has the burden of proving by a preponderance of the evidence that a debt is nondischargeable under § 523(a)(2)(A). *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ In *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277 (6th Cir.1998), the court of appeals clarified that under § 523(a)(2), the creditor must prove the following elements:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Id.* at 280–81 (footnote omitted) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993)).

In *Providian Bancorp v. Shartz (In re Shartz)*, 221 B.R. 397 (6th Cir. BAP 1998), the panel addressed the state of the law regarding dischargeability under § 523 in the Sixth Circuit after *Rembert*.

The Sixth Circuit recently clarified that "[t]he use of a credit card represents either an actual or implied intent to repay the debt incurred." *Rembert*, 141 F.3d at 281. However, the court noted that use of a credit card does not imply that the user has the present ability to repay the debt. *Id.* Rather, the court held that fraudulent intent must be determined from the totality of the circumstances and should not be implied solely based on use of a credit card when there is no immediate ability to repay. *Id.* at 281–82.

*Shartz*, 221 B.R. at 399–400.

■ Thus, *Rembert* and *Shartz* hold that a debtor's inability to pay the debt, by itself, is not enough to prove fraud or intent not to pay. Rather, the debtor's intent must be determined from the totality of the circumstances. Factors which may be helpful in evaluating a debtor's subjective intent to repay a credit card debt include:

(1) the length of time between the charges made and the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases were made for luxuries or necessities.

*Rembert*, 141 F.3d at 282, n. 3.

### III.

■ In the present case, Capital One asserts that the Ferros obtained $17,442.13

through false representations because each time they used the credit card they represented that they had an intent to repay the debt when in fact they did not have such an intention. Capital One also asserts that the Ferros made a false representation of their ability to pay when they made payments on the debt by using cash advances from a different card, a scheme commonly known as credit card kiting.

The Ferros assert that they did intend to repay the debt.

Accordingly, the Court must consider the totality of circumstances to determine if there was fraudulent intent. The Court finds that several factors suggest that the Ferros did not have the intent to repay the debt.

First, there was a very short length of time between the opening of the credit card account and the Ferros' bankruptcy filing—only four months.

Second, the Ferros' financial condition at the time they opened the credit card account was extremely poor. Mr. Ferro had been unemployed for ten months at the time the account was opened. Mr. Ferro testified that each month they only had a surplus of approximately $61 to pay on credit card debt. Mr. Ferro's prospects for employment at that time were not good. When he was initially laid off, he had been told it would be for three months. However, at the time the account was opened, he had been laid off for ten months. Mr. Ferro testified that each month he would call to find out his chances of being re-employed and was told "maybe next month."

Third, even though their financial condition was bad, the Ferros continued to gamble heavily. The Ferros testified that they continued to do so even though they had

never won big and even though they did not expect to be able to repay their debts through gambling.

Finally, and perhaps most importantly in this case, the Ferros lied about their income on the credit application to Capital One. They represented that their annual household income was $108,000 when in fact it had never been higher than $70,000. Furthermore, they did not disclose that Mr. Ferro had been laid off for ten months at the time they submitted the application.

The Ferros assert that several facts show that they did have an intent to repay their debts. First, they argue that they transferred balances to the Capital One credit card in order to obtain a lower interest rate and that if they did not intend to pay back the debt, there would be no reason to seek a lower rate. Second, they argue that the payment of $600, which was $200 above the minimum payment, indicates a desire to pay off the debt.[1] Third, they assert that their history of refinancing their home to pay off prior credit card debt indicates a desire to repay the debt rather than to discharge it.

The Court finds that the Ferros' assertion that they intended to repay the debt is simply not credible. The Ferros' testimony at trial differed significantly from their testimony at their Rule 2004 examination on a number of subjects, such as when they became aware they had a gambling problem, how much they owed in credit card debt at the time of their refinancing, whether or not they used the credit cards for necessities like gas and groceries, when they became aware of their financial problems, and whether or not they expected to be able to repay the debt through gambling winnings. The Court finds that Mr. Ferro's testimony that "I just—I wanted

---

1. Although the Ferros asserted they paid $200 more than the minimum payment, they actually only paid $99 more than the minimum payment, which was $501.

to try to win so I could pay everybody off—pay the bills off" is especially self-serving and lacking credibility. He testified at the Rule 2004 examination that he did not expect to be able to pay off his debts through winnings, however at trial he and his wife testified that they hoped it would be a source to pay off debts.

Cases such as this one, involving card-use to finance gambling, with the claim of *intent to pay with gambling winnings,* present a particularly difficult challenge for determining whether the debtor, at card-use, *subjectively* intended to pay. Obviously, gamblers gamble with the hope of winning, *not* losing. . . . But, *hoping* to win is *not* synonymous with *intending* to pay. "A statement of intent (I will repay) is distinguishable from a hope or a desire to [do so. It] . . . suggests a plan to repay [, and] . . . an anticipated source of funds from which [it] might be made."

*AT & T Universal Card Servs. v. Mercer (In re Mercer),* 246 F.3d 391, 409–10 (5th Cir.2001) (emphasis in original) (citation and footnote omitted).

The Ferros' other assertions regarding their intent to repay are equally unconvincing. A balance transfer to obtain a lower interest rate might be indicative of an intent to repay in some cases. However, in the present case, where the transfer is accompanied by new debt, and the Ferros made payments through cash transfers from other accounts, it is more likely that the transfer shows an intent to continue to be able to obtain credit when there is no ability to repay it.

In the present case, the Court finds that the totality of the circumstances indicate that the Ferros did not have the subjective intent to repay the debt.

### IV.

In sum, the Court finds: (1) the Ferros obtained money through a material misrepresentation that they had the intent to repay the debt; (2) at the time, the Ferros knew this representation was false or made with gross recklessness as to its truth; (3) the Ferros intended to deceive Capital One; (4) Capital One justifiably relied on the false representation; and (5) its reliance was the proximate cause of loss.

The Court finds that Capital One has proven the elements of 11 U.S.C. § 523(a)(2)(A) by a preponderance of the evidence. Accordingly, discharge of the debt is denied pursuant to § 523(a)(2)(A).

The Court will enter an appropriate order.