NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0107n.06

No. 10-2242

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Jan 31, 2012**

LEONARD GREEN, Clerk

| | |
|---|---|
| In re ROBERT M. GRENIER and GERTRUDE A. GRENIER, | ) ) ) |
| Debtors. | ) ) |
| ——————————————— | ) ) ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CRAIG R. NEHASIL and DONNA E. NEHASIL, as Next Friend of Richard J. Nehasil, Timothy R. Nehasil and Christopher P. Nehasil, | ) ) ) ) ) |
| Plaintiffs-Appellees, | ) ) |
| v. | ) ) |
| ROBERT M. GRENIER and GERTRUDE A. GRENIER, | ) ) ) |
| Defendants-Appellants. | ) ) |

Before: BOGGS, ROGERS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. After Robert and Gertrude Grenier sold their house to Craig and Donna Nehasil, the Nehasils discovered defects in the house that the Greniers had concealed from them (and from a previous would-be buyer). The Nehasils sued for fraud in Michigan state court, winning nearly $300,000. When the Greniers sought to discharge that judgment in their Chapter 7 bankruptcy proceeding, the Nehasils sued to stop them. The bankruptcy and district courts sided with the Nehasils and deemed the fraud judgment nondischargeable. We affirm.

I.

In December 1997, the Nehasils expressed interest in buying the Greniers' house in Canton, Michigan. They asked the Greniers if there were any noteworthy defects in the house, and the Greniers reported none. The Nehasils purchased the property. They soon discovered a variety of problems with the house, including water damage, rotting floors, insect infestation, faulty electrical wiring, and fake water fixtures not hooked up to the household plumbing system. When they investigated further, the Nehasils learned they were not the first ones to face this predicament. The Greniers had previously sold the house to Hilda Maxwell, who had sued them upon learning of the house's poor condition and had ultimately gotten her money back. The Nehasils took the same tack, and in April 2004 a Michigan jury found the Greniers liable for fraud, awarding $294,563.74 in damages and costs.

The Greniers filed for bankruptcy. They first sought to file under Chapter 13, but the bankruptcy court found them ineligible because their debts exceeded the statutory limit. *See* 11 U.S.C. § 109(e). They then tried Chapter 7, filing a petition with the bankruptcy court in December 2008. Two months later, the Nehasils filed a complaint in the bankruptcy court, seeking a declaration that the Greniers could not discharge the judgment against them because it stemmed from fraud. *See* 11 U.S.C. § 523(a)(2)(A). The bankruptcy court agreed on collateral-estoppel grounds, finding that the state-court fraud judgment entitled the Nehasils to summary judgment. The district court affirmed. *In re Grenier*, 430 B.R. 446 (E.D. Mich. 2010).

II.

At issue is a provision of the Bankruptcy Code that makes nondischargeable any debt for money or property "obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Nehasils argue, and the courts below held, that this provision applies to the state-court judgment against the Greniers. We agree.

To exclude a debt from discharge under this provision, a creditor must establish four things:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d 277, 280–81 (6th Cir. 1998). The Greniers claim that the first requirement is missing here, reasoning that Michigan law has a different mental-state standard from the Bankruptcy Code. While the state tort of fraud imposes liability on defendants who are reckless about the truth of the statements they make, the federal standard requires at least gross recklessness. *Compare id.* at 280 *with Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). As a result, the Greniers urge, the Michigan fraud judgment against them does not suffice under § 523(a)(2)(A), because the Michigan jury might have found them liable based only on recklessly false statements, not statements made with gross recklessness or knowledge of their falsity.

That argument might have some force if all we had to go on were the fact of the Greniers' liability for fraud. But we have more. In finding the Greniers liable, the Michigan jury made

specific factual findings. It answered "yes" to the question whether the Greniers had "actual knowledge" of the material facts about the condition of their home that they failed to disclose. R.24 (Bankr. E.D. Mich. No. 09-04351) Ex. C at 29.

Michigan collateral-estoppel law, applicable here, *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), "bars the relitigation of issues previously decided when such issues are raised in a subsequent suit by the same parties." *Knoblauch v. Kenyon*, 415 N.W.2d 286, 288 (Mich. App. 1987). The party invoking collateral estoppel must show four things: (1) the same parties were involved in both proceedings; (2) the issue was litigated and resolved in the first proceeding; (3) the party against whom the issue was decided in the first proceeding "had a full and fair opportunity to litigate the issue"; and (4) it must be "clear[ ], definite[ ], and unequivocal[ ]" from the record of the first proceeding how the issue was decided. *People v. Gates*, 452 N.W.2d 627, 630–31 (Mich. 1990). The Nehasils have shown all four, and accordingly the jury's finding that the Greniers knew of the defects in their home prevents them from relitigating the issue now. Indeed, we have previously recognized that, if the state court record "invoke[s] the [defendants'] knowledge of their misrepresentations," as is true here, collateral estoppel may apply even if the Bankruptcy Code's gross-recklessness standard is higher than its counterpart in Michigan common law fraud. *See In re Livingston*, 372 F. App'x 613, 619 (6th Cir. 2010). As in *Livingston*, we need not decide whether the Bankruptcy Code's standard is identical to Michigan's.

The Greniers make one other argument: that the fraud exception does not apply because the Nehasils did not show that the Greniers received any money from the fraud. Br. at 12–13; *see Rembert*, 141 F.3d at 280 (creditor must show that "the debtor obtained money through a material

misrepresentation"). But this claim, too, is undone by the Michigan verdict: the jury found that the Greniers' misrepresentations and omissions were a proximate cause of the Nehasils' decision to buy the house at the price they paid. R.24 (Bankr. E.D. Mich. No. 09-04351) Ex. C at 28–29. There is no question that the Greniers obtained money from the Nehasils as a result of their fraud. As a result, we need not decide whether such a showing is required in the first place. *Compare Rembert*, 141 F.3d at 280, *with Cohen v. de la Cruz*, 523 U.S. 213, 215, 217–18 (1998).

Also unavailing is the Greniers' appeal from the denial of their motion to dismiss for failure to state a claim. Though the Nehasils' complaint could have been more detailed, it made reference to and incorporated the state court judgment, providing sufficient notice to the Greniers of the nature of the fraud charge against them. *See* Fed. R. Civ. P. 9(b); *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011).

III.

For these reasons, we affirm.