IN RE: Ronald D. DRAISE, Jr. Georgia A. Draise, Debtors.

Michael Truban, Plaintiff,

v.

Georgia A. Draise, Defendant.

Case No. 12-57970
Adv. Pro. No. 12-2524

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Signed January 29, 2015

Gary A Fleshman, Chillicothe, OH 45601, for Georgia Ann Draise.

Sarah A Williams, Andrew J. Gerdes, PLC, East Lansing, MI, for Michael Truban.

## MEMORANDUM OPINION AND ORDER REGARDING ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY (DOC. NO. 1)

Judge Caldwell

This Memorandum Opinion and Order serves as the Court's findings of fact and conclusions of law for the adversary proceeding commenced on behalf of Michael Truban ("Plaintiff") against Georgia A. Draise ("Defendant"). Plaintiff claims he was deceived and mislead by his former fiancé, the Defendant, to believe they were buying a home together, as a family. This alleged deceit led Plaintiff to sign a note and mortgage, and provide a substantial

down payment and improvements for property, that he later learned Defendant had titled solely in her name. Plaintiff pleads grave injury, and seeks recompense for his investment in the home now occupied by the Defendant, and her co-debtor and spouse, Ronald D. Draise, Jr. ("Mr. Draise").

For reasons detailed below, the Court finds and concludes that the willful and malicious injury provision of the United States Bankruptcy Code ("Code") (§ 523(a)(6)), is not applicable. However, based upon the preponderance of the evidence, including credibility assessments, the Court finds and concludes that the Defendant is barred by the Code from discharging her obligations, based upon false pretenses (§ 523(a)(2)(A)).

What follows is an account of a couple both previously married with children, divorced and left with personal belongings and real estate. What remained, however, was the aspiration to start new relationships and families. They met during the summer of 2004 through an online dating service, and rapidly progressed from courting to sharing an apartment and later Plaintiff's former marital home. The combined household included Defendant's daughter from her first marriage, Lauren Smith ("Lauren"), with occasional visits by the Plaintiff's children from his first marriage.

The Plaintiff testified that from the beginning of the relationship, the Defendant expressed that she wanted to build a home on her family's farmland in Chillicothe, Ohio. To this end, the Plaintiff and Defendant decided to purchase a manufactured home for location on farmland owned by the Defendant's family. To achieve this goal the parties remodeled Plaintiff's former marital residence to prepare it for sale, including new flooring, a remodeled bathroom, and structural repairs. In addi-

tion, in September 2007 the Plaintiff cosigned a loan so that the Defendant could buy a Ford Ranger used truck for $10,732.54.

The following year, on April 11, 2008, Plaintiff obtained a $50,000.00 mortgage on his former marital home to reduce the couples' debts so they could obtain financing to purchase a home together. They used approximately $18,000.00 to pay debts, including the Defendant's Ford Ranger, and they set aside approximately $30,000.00 for a down payment on a new home together. On April 18, 2008, they then deposited the $30,000.00 into a joint checking account opened at The Huntington National Bank. At that time the Plaintiff, Defendant and Lauren began to view modular homes together on a regular basis.

Unfortunately, the relationship soured and the Defendant started looking for a trailer to purchase on her own. This prompted the Defendant in May 2008, to transfer approximately $29,000.00 from the couples' joint account to her personal bank account. Upon reconciliation, in August 2008, the Defendant returned $27,000.00 of the money to the joint account so she and the Defendant could purchase a modular home together. Subsequently, on August 22, 2008, Plaintiff and Defendant paid from their joint account a $5,000.00 down payment to Clayton Homes for a modular home they picked out together.

Awaiting the construction of their new modular home, the Plaintiff and the Defendant considered what portion of the acreage to use. Initially, they focused on a five-acre parcel near the back of the farm, but it proved too far from the road to make utility connections. As a result, the Defendant and her parents decided on a parcel closer to the road in August 2008. Plaintiff credibly testified that it was his belief that they were purchasing the modu-

lar home together to be located on the Chillicothe farmland, and once completed they would own it all together.

Next, on September 5, 2008, the Plaintiff deposited a check for $45,523.92 into the joint account from the sale proceeds of his former marital home. The Plaintiff, the Defendant and Lauren then moved into a temporary apartment. Lauren's testimony demonstrates, however, that the relationship between Plaintiff and Defendant remained troubled. She overheard an argument, and according to her testimony Plaintiff stated, "Well, you're stuck with me now." To which Defendant replied, "Well, I'm not stuck with you. It's my family's land and I'm going to be making the payments. So I'm not stuck.".

On September 24, 2008, Defendant's parents transferred, solely into the name of their daughter, the Defendant, 1.051 acres of land located in Chillicothe, Ohio. Approximately two months later on November 5, 2008, Plaintiff and Defendant closed on their new Clayton modular home for placement on a foundation on the Chillicothe acreage. According to the Settlement Statement, a Ms. Susan Allyn served as the title agent at closing. However, the Court did not hear any testimony from Ms. Allyn, the mortgage lender or any of the witnesses to the transaction.

The Court only knows that the Plaintiff and Defendant were both present at closing. They both signed the sales contract for $141,451.50. From the closing papers and bank account records, the Plaintiff and Defendant paid a $57,000.00 down payment from their joint checking account. In addition, both the Plaintiff and the Defendant, defined collectively as the "Borrower", signed the Mortgage in addition to the Note. This obligated them individually and collectively to pay Vanderbilt Mortgage $83,644.19 in monthly principal and interest installments of $806.12 for fifteen years at 8.14% interest. Additionally, the Mortgage refers to the September 24, 2008, deed of the Chillicothe acreage as the basis for the "Borrower's" interest in the property that is now subject to the lien of Vanderbilt Mortgage.

Despite these facts, the Defendant testified that the Plaintiff knew that he would not have any legal interest in the home. Further, the Defendant testified that she contributed approximately $24,000.00 towards the down payment. Yet, Defendant failed to provide any asset and employment information on the Mortgage Application. Instead, according to the Defendant's testimony, she saved these and other funds in excess of $30,000.00, in a lockbox. Defendant did not offer the lockbox into evidence, but we do know that her bank records and tax returns show numerous overdraft charges and nominal employment income around the time of the home purchase. The Defendant's 2007 Federal Tax Return disclosed income of $5,633.00, and the one for 2008 showed $7,899.00. The Defendant's personal checking account statements for the three months prior to closing include approximately eighteen overdraft charges of $37.50 each.

In March of 2009, Plaintiff, the Defendant and Lauren moved into their new home. The Plaintiff and his father completed some improvements to the home. However, approximately two years later, in May of 2011, the couple separated, and the Plaintiff moved in with his family. On a hunch, according to the Plaintiff, he reviewed the online property records for the home. Plaintiff testified that is the first time he became aware that the deed was solely in Defendant's name. According to the Plaintiff's testimony, he never confronted the Defendant out of fear, and his therapist advised contacting an attorney.

In the fall of that same year, the Defendant became engaged to her co-debtor in this case, Mr. Draise. The Defendant and Mr. Draise now reside in the home with Lauren. Plaintiff remains obligated on the note and mortgage for a home titled only in the name of the Defendant. In late 2012, the Plaintiff filed a civil case (12–CV–081–9801) against Defendant in the Franklin County, Ohio Common Pleas Court. Two months later on September 13, 2012, the Defendant and Mr. Draise filed this bankruptcy case. Plaintiff listed the home on her bankruptcy schedules, and detailed that it is subject to Plaintiff's "equitable" interest. Plaintiff filed this adversary proceeding on December 20, 2012. Specifically, the Plaintiff requests that this Court declare his $62,000.00 down payment and improvements he made to the home totaling $ 2,800.00, non-dischargeable ($64,800.00). In addition, on January 17, 2013, Plaintiff filed an unsecured claim for $74,157.00.

In a span of four years the Plaintiff and Defendant, both previously divorced with children, met, moved into together, became engaged and decided to purchase a home as a couple. No one other than the parties can truly know who should carry the lion's share of blame. The Court's role, however, is to determine, after the fact, how best to allocate the burdens of this failed relationship.

 The easier question to answer is whether the Defendant set out from the beginning to willfully and maliciously injure the Plaintiff (11 U.S.C. § 532(a)(6)). Proof by a preponderance of the evidence that Defendant wanted to deprive the Plaintiff of any interest in the property, or knew that this would be the most likely outcome, is required. *First Assembly of God v. Ping (In re Ping)*, 506 B.R. 486, 495–96 (Bankr.S.D.Ohio 2014); *Ohio Dept. of Job and Family Services v. Urbina (In re Urbina)*, 519 B.R. 694, 698–99 (Bankr. N.D.Ohio 2014). To make such a finding, the Court would also have to determine that their relationship was a charade from the outset, and that the real agenda was the construction of a manufactured home on Defendant's family farm, that only she would own. Based upon the Court's observation of both the Plaintiff and the Defendant and considering their testimony, there is insufficient evidence to support this conclusion.

 In the alternative, the Plaintiff argues that all the money he invested in the property should be non-dischargeable because Defendant mislead him to believe and gave him the false impression that they would own the manufactured home and the real property together, as a family (11 U.S.C. § 523(a)(2)(A)). To prevail, Plaintiff must prove by a preponderance of the evidence that the loss occurred as a proximate result of his justifiable reliance upon the Defendant's intentionally false impression. *Coughlin Chevrolet, Inc. v. Thompson (In re Thompson)*, 458 B.R. 409, 420–21 (Bankr.S.D.Ohio 2011) (citing *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998)). For the following reasons, the Court finds and concludes that the Plaintiff has sustained his burden of proof on this count.

First, from the beginning of their relationship the Defendant told the Plaintiff she wanted to build a home on her family's farm property. The Plaintiff understood this desire, and agreed to this as the ultimate goal for the two of them and Defendant's daughter, Lauren. To this end, they lived together as a family in three locations. They started in her apartment where he would spend his nights returning to his former marital home only to feed the dog. Once Defendant's apartment lease ended, they moved into his former marital

home and began to make improvements to prepare the home for sale. Finally, once the sale was completed they all three lived in a temporary apartment together until construction was completed on the manufactured home, including its placement on a basement on the Defendant's family farm property.

Second, the Plaintiff invested the sale proceeds from his former marital home in purchasing the manufactured home, and having it placed on the Defendant's family farm. The record is unclear whether the Defendant invested any of her own funds in the home. She testified that she had large sums of money, approximately $24,000.00 to $30,000.00 that she kept in a lock bock, and that she used some of these funds to contribute to the home purchase. The bank and tax records discussed earlier, however, fail to support this proposition. Further, the Defendant failed to list any employment income or other assets on the mortgage application. To assist in qualification for a mortgage, the Plaintiff even paid the outstanding debt on the Defendant's truck for which he served as a co-signatory.

Third, there is no doubt that the Defendant was aware of the Plaintiff's substantial investment in the home, and that he planned to live there with her and Lauren as a family both before and after they were married. The argument over heard by Lauren, detailed above, confirms that the Plaintiff believed that he would have an interest in the manufactured home and the real estate, along with the Defendant. The argument also confirms that the Defendant was aware of this fact, and that she had a different plan to make sure he did not have any interest. The closing documents show that even the lender and title company were under the impression that the property would belong to both the Plaintiff and the Defendant. The refer-ence to the joint ownership of the land in the "Derivation Clause" confirms this fact.

All these factors lead the Court to find and conclude that the Defendant intentionally gave the Plaintiff the false impression that he was investing in and living in a home that would bear his name as well as hers. Given the length of time they lived together as a family, before and after the completion of the home, establishes that the Plaintiff justifiably relied upon this false impression. Except for this deceit, he would not have lost his investment and remain responsible for a note and mortgage for a home currently occupied by the Defendant and her co-debtor husband.

For these reasons, the Defendant's $64,800.00 debt owed to Plaintiff is **NON-DISCHARGEABLE**.

**IT IS SO ORDERED.**