In re Salvatore TRIVISANI, Jr., Debtor.

**AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,**

v.

**Salvatore TRIVISANI, Jr., Defendant.**

Bankruptcy No. 97–2–1323–PM.
Adversary No. 98–1–AP045–PM.

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Sept. 17, 1998.

John B. Raftery, Fairfax, VA, for Plaintiff AT&T Universal Card Services Corp.

John R. Owen, Hyattsville, MD, for Debtor–Defendant.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

This matter came before the court for trial on the complaint of AT & T Universal Card Services Corp. ("AT & T") seeking a declaration that its claim against Salvatore Trivisani, Jr. (sometimes "debtor") in the sum of $4,042.89 is not dischargeable by virtue of 11 U.S.C. § 523(a)(2)(A). That section provides:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In its complaint, AT & T points out that during the period of May 14, 1997, through June 5, 1997, debtor made three purchases and obtained two cash advances, totaling $4,742.89, and paid only $10.00 on his AT & T account prior to his filing a bankruptcy case under Chapter 7 on October 7, 1997. The complaint charges:

6. The Debtor's actions during the period preceding the filing of the Chapter 7 Bankruptcy petition indicate an intent to obtain credit from AT & T by utilizing the authorized credit facility while being un-

able to repay same, or, with the intention of not repaying same. The Debtor knew, or should have known, that his financial situation would not permit repayment to AT & T.

7. The foregoing charges were made with knowledge that the Debtor was unable to repay the credit obtained and without the intent to repay.

8. The charges described above, based on their timing, manner and the financial condition of the Debtor, were obtained by and through false pretenses, a false representation and/or actual fraud by the Debtor.

The facts, for the most part, are not in dispute. In 1993, the sales department of AT & T instructed credit reporting agencies to run programs to find individuals who did not have 60–90 day arrearages on their credit cards, did not have an existing AT & T card, had not previously filed bankruptcy, and had no public records of judgments. The rating produced, called a FICO score, is checked from time to time after issuance so that if the cardholder's score drops below a set level, the credit would either be reduced or cut off. Another variety of an unsatisfactory account is that of an individual who pays off his or her balance each month. Such an account is rejected because the account generates no double digit interest charges on monthly balances.

The AT & T credit card solicitation went out to Mr. Trivisani, who received a FICO score of 753. At the time that the solicitation went out to him, Mr. Trivisani's yearly earnings were approximately the same as they were at the time of trial, that is, $19,000. Debtor's entire income is derived from his pension and from a disability payment aggregating approximately $1,650 per month. In the course of his dealings with AT & T, debtor received four AT & T Convenience Checks (*Defendant's Exhibit No. 1* ), and was advised that he could write his Convenience Checks up to 100% of his available cash advance limit for gifts or whatever he wanted. One check was already preprinted and made out to "Cash."

The circumstances that led to the filing of this adversary proceeding arose when the debtor used this account for loans to members of his family, as he had done on previous occasions. Here, Mr. Trivisani made loans aggregating $4,300 to his daughter to assist her in paying her legal fees in a divorce action. He testified that his daughter had promised to repay him approximately $315 per month, money that his daughter predicted she would realize as the result of her husband being dropped from her medical insurance policy. When this proved not to be the fact, bankruptcy intervened.

■ The court finds the debtor credible in all respects and finds that it was his intention at all times to repay the obligation to AT & T. It does not take an economist to figure that this disabled retiree did not have resources to fall back on should anything unfortunate happen to him. It is not surprising, were he to fall behind on one account, or if a credit card issuer offered a more favorable interest rate, that he would use one account to pay down another.

■ Plaintiff contends that the debtor made two implicit representations: (1) that he had the ability to repay the money he borrowed, and (2) that he had the intention to do so. The first representation has no significance because fraud claims based on this kind of representation are not relevant under § 523(a)(2)(A) of the Bankruptcy Code. *In re Van Steinburg,* 744 F.2d 1060 (C.A.4 1984). The court finds as a fact that, at the time the money was borrowed, the debtor intended to repay it. The court finds no present intention not to perform. *See Miller v. Fairchild Indus.,* 97 Md.App. 324, 342–43, 629 A.2d 1293, 1302–03 (1993) (where the Court of Appeals of Maryland explained that predictions or promissory statements are not fraudulent representations). *See Palmacci v. Umpierrez,* 121 F.3d 781, 788 (C.A.1 1997) ("A 'dumb but honest' defendant does not satisfy the test of scienter.") (citation omitted).

In constructing this opinion, the court has borrowed liberally from the decision of Chief Judge Aspen in the case of *Citibank (South Dakota), N.A. v. Michel,* 220 B.R. 603 (N.D.Ill.1998). Judge Aspen's opinion is

brief but comprehensive. The court finds the following especially instructive:

> [F]raud exists only if a speaker is *subjectively* aware that his statements are false or that they might be false. *In re Christensen*, 193 B.R. at 866; *In re Feld*, 203 B.R. at 365; *see also* RESTATEMENT (SECOND) OF TORTS § 530(1) ("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."). Obviously the court must consider objective evidence that is probative of the debtor's intent to repay in addition to considering the debtor's demeanor, but the ultimate inquiry still seeks to determine the debtor's subjective intent. *See In re Anastas*, 94 F.3d at 1286 ("[T]he hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith."); *In re Sheridan*, 57 F.3d at 634 (objective circumstantial evidence may support a finding of fraud, but it does not compel such a finding when the trial judge finds the debtor's contrary testimony to be credible); RESTATEMENT (SECOND) OF TORTS § 526 cmt. d ("The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation.").

*Citibank v. Michel*, 220 B.R. at 606 (emphasis added) (footnote omitted).

■ While no dischargeability case has a twin brother or a twin sister, the great majority of cases stand for the proposition that the inquiry focuses upon the debtor's subjective intent to repay credit card debt at the time that the credit card was obtained. *See, e.g., In re Shartz*, 221 B.R. 397 (6th Cir.BAP 1998) (even though the debtor had lost her job and was unable to repay the debt when it was incurred, the debtor's credit card debt did not fall within the dischargeability exception); *In re Scocozzo*, 220 B.R. 850 (Bankr. M.D. Pa.1998) (the sole fact that, at the time the debtor obtained cash advances, his only viable source of repayment was potential gambling winnings was held to be an inadequate basis to preclude discharge). Likewise, a debtor's objective inability to pay at the time that the credit card debt is incurred does not establish, as a matter of law, that the implied representation to pay was false and made with the intent to deceive. *In re Cacciatore*, No. CV–97–4654 (ERK), 1998 WL 412644 (E.D.N.Y. July 21, 1998). Finally, in the case of *In re Rembert*, 141 F.3d 277 (C.A.6 1998), in affirming the judgment of the district court, the Sixth Circuit concluded that the bankruptcy court had erred by considering the debtor's ability to repay, as well as her intent to repay. While in hindsight the debtor admitted her belief that she would acquire sufficient gambling winnings to repay her credit card issuers was objectively unreasonable, under the totality of the circumstances, the court of appeals found that the bankruptcy court incorrectly determined that the debtor possessed the necessary fraudulent intent to dupe the credit card companies. The court stated:

> We believe that "the representation made by the cardholder in a credit card transaction is not that he has an ability to repay the debt; it is that he has an intention to repay." *Anastas*, 94 F.3d at 1287. To measure a debtor's intention to repay by her ability to do so, without more, would be contrary to one of the main reasons consumers use credit cards: because they often lack the ability to pay in full at the time they desire credit. See *Feld*, 203 B.R. at 368 (citing *Briese*, 196 B.R. at 448). Further, the language of § 523(a)(2)(A) expressly prohibits using a "statement respecting the debtor's or an insider's financial condition" as a basis for fraud. . . . Thus, we hold that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt.

*Rembert*, 141 F.3d at 281.

Viewed under the totality of the circumstances, the court finds it amazing that the debtor was able to handle his affairs for a number of years on his limited resources. As in cases such as those discussed above, with hindsight, debtor might have sought more assurance with respect to his daughter's realistic ability to repay him when he took advantage of the opportunity offered to

him by the plaintiff. While assumption of the risk is no defense to a dischargeability action, plaintiff had it within its power, through more careful underwriting, to avoid dealing with this debtor who was in such a precarious financial situation. Little about his financial condition changed through the years. There was no likelihood for him to go out and earn extra income. Before issuing the card, had plaintiff ascertained the credit limits on debtor's ten existing credit cards and considered that in relation to his income from his pension and disability payment, the underwriters most probably would have rejected the credit out of hand.

An appropriate order will be entered.