**In re Thomas R. SAVAGE, Debtor.**

**Citibank (S.D.), N.A., Plaintiff,**

v.

**Thomas R. Savage, Defendant.**

**Universal Bank, N.A., Plaintiff,**

v.

**Thomas R. Savage, Defendant.**

**Bankruptcy No. 00–5–7983–JS.**

**Adversary Nos. 00–5968–JS, 00–5969–JS.**

United States Bankruptcy Court,
. D. Maryland.

Sept. 29, 2003.

Kevin M. Fitzpatrick, Esquire, Kevin M. Fitzpatrick, P.C., Fairfax, VA, for plaintiffs.

Stuart R. Blatt, Esquire, Towson, MD, for defendant.

Sean C. Logan, Baltimore, MD, Chapter 7 Trustee.

### MEMORANDUM OPINION DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT, DISMISSING COMPLAINTS AND DECLARING CREDIT CARD DEBTS TO BE DISCHARGEABLE

JAMES F. SCHNEIDER, Chief Judge.

The above-captioned adversary proceedings have been consolidated for purposes of trial on the merits. The plaintiffs filed the instant motions for summary judgment upon the *pro se* debtor-defendant's failure to respond to the plaintiff's request for admissions in these complaints for nondischargeability of credit card debt.

### QUESTION PRESENTED

Did the debtor's failure to respond to the plaintiff's requested admission that the debtor did not intend to repay the credit debt entitle the creditor to summary judgment on that issue, even though the debtor denied the same allegation in his answer to the creditor's dischargeability complaint?

No. In this case, the Court will not deem to have been admitted the alleged fact of the debtor's intent not to repay the credit card debt at the time it was incurred, where the *pro se* defendant had already denied the allegation in his answer and where the plaintiff made no effort to afford the *pro se* defendant a warning as to the possible effect of his failure to respond to the motion.

Because the central issue was the debtor's intention to repay *vel non*, this Court reserved ruling on the summary judgment motions and allowed the complaints to proceed to trial on the merits to determine whether the plaintiffs could prove the allegation of lack of intent to repay if put to the test. For the reasons set forth, the motions for summary judgment will be denied, the complaints will be dismissed and the debts at issue will be declared to be dischargeable.

At trial, the defendant testified that at all times he intended to repay the credit card companies. The Court is convinced of the debtor's truthfulness in this regard and makes the following observations:

The debtor is at heart a victim of credit card abuse. As a person suffering from a total and permanent disability, he lives on a fixed and limited income. His dependence upon easy credit furnished by the plaintiffs and others (he testified that he has had 18 credit cards at various times) became a way of life for him. Regular mail solicitations by these and other credit card companies invited him to shift balances from one credit card account to another, which he admittedly did. The debtor freely acknowledged that in this manner he was "robbing Peter to pay Paul," but stated that he had always intended to pay both Peter and Paul. The credit card companies demanded only minimum payments to keep the accounts in good standing, to such a degree that the debtor would never be able to pay his balances in full. When the balances became overwhelming and the amount of the required minimum payment mushroomed beyond the debtor's means, he sought to negotiate a payment plan with the plaintiffs, which they rejected. When the debtor filed for relief under Chapter 7 on advice of counsel, the plaintiffs sued him. Thereafter, his attorney declined to represent him in this litigation.

The instant cause of action, based as it is upon the allegation of a debtor's fraudulent intent, is difficult if not impossible to prove by direct evidence. In this situation, such plaintiffs as these have a distinct advantage when they bring such a suit as this against *pro se* debtors, charging the unprovable allegation that the debtors did not intend to repay these debts when they

were incurred. Often no answer is filed and the plaintiffs win by default. In the unlikely event that the defendant realizes the necessity of filing an answer denying the allegations contained in the complaint, the plaintiffs, as they did here, file discovery requests against the *pro se* defendant, who, failing to grasp the consequences of failing to respond, does not respond, and is then deemed by the plaintiffs to have admitted the allegations in the complaint that the debtor already denied. This seems to this Court to be the height of injustice, but it is being perpetrated in this Court every day by these plaintiffs and a number of other shrewd lenders and their cunning counsel.

## FINDINGS OF FACT

On June 19, 2000, the debtor, Thomas Savage, represented by counsel, filed the instant Chapter 7 bankruptcy petition in this Court. On October 13, 2000, the plaintiffs, Citibank (S.D.), N.A. ("Citibank"), and Universal Bank, N.A. ("Universal"), represented by Kevin Michael Fitzpatrick, filed the instant adversary proceedings against the debtor, seeking a determination that the debts incurred as a result of credit card purchases and cash advances[1] are nondischargeable, pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.[2] The complaints are based upon the allegation that the debtor had no intention of repaying the debts at the time they were incurred.

On November 29, 2000, this Court conducted a scheduling conference at which time identical schedules were issued for both adversary proceedings and they were consolidated for trial. At all times since the filing of these complaints, the debtor has appeared *pro se*. On December 15, 2000, the *pro se* debtor filed an answer in Adversary Proceeding No. 00–5968 in which he admitted using the plaintiffs' credit cards to make purchases and obtain cash advances, but denied all the other allegations, including the allegation that his representation "of an intent to repay and an ability to repay was false when such representation was made." In his answer, the debtor made the following statement, which he repeated at trial:

Further answering, the debtor respectfully represents that the debt that he accumulated was over the course of the past 15 years and was almost in its entirety in cash advances. Unfortunately, the debtor is and has been permanently and totally disabled for many years and is unable to work and will be unable to work ever again. While he does receive a small disability check, he was unable to make minimal payments

---

1. As to Citibank, the debt was alleged to be in the amount of $2,509.76; as to Universal, the debt was claimed to be in the amount of $3,191.17. In addition, both complaints sought interest, court costs and counsel fees.

2. Section 523(a)(2)(A) provides, as follows:

§ 523. Exceptions to discharge
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
\* \* \* \* \* \*
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]
11 U.S.C. § 523(a)(2)(A).

on all of his debts until it became impossible for him to continue to reside with his parents and be supported by them as he was when the aforesaid debts were incurred. He did not borrow the money with the intent not to repay it. It was only when he was forced to move out on his own and became responsible for his own overhead that he found that he could not meet his bills as they became due. Further answering, the debtor respectfully represents that all of the aforesaid charges and cash advances were made or taken while he continued to reside with his parents and the arrangement was working for him.

Answer [P. 5], ¶¶ 3, 4 and 5.

The plaintiffs mailed discovery requests to the defendant, including interrogatories, requests for production of documents and for admissions. The defendant submitted partial responses to the interrogatories and production of documents, but did not respond at all to the request for admissions.

On April 2, 2001, the plaintiffs filed the instant motions for summary judgment based upon the assertion that all unanswered requests for admission of facts be deemed admitted. On June 6, 2001, this Court denied both motions for summary judgment. The plaintiffs renewed the motions for summary judgment at a hearing on November 26, 2001, at which time this Court deferred ruling and the instant complaints proceeded to trial.

The Citibank adversary alleged that between December 17 and 21, 1999, the debtor made three purchases totaling $204.26 and took six cash advances totaling $2,305.50, which, together with accrued interest, totaled $2,509.76. These transactions were made through Account No. 5424–1800–1717–7616, which the debtor opened with Citibank in September 1984. At the time these charges were incurred,

the debtor owed a previous balance of $8,286.69. At the time of each purchase and each cash advance, the debtor did not have the ability to repay the minimum balance or the total balance. There were no returns (credits) for any of the items purchased with these cards. The account agreement provided for the payment of the plaintiff's counsel fees should collection efforts be necessary. At the time the charges on the account were incurred, the plaintiff did not know that the debtor was unable to repay the debts.

The Universal adversary alleged that between December 17 and 19, 1999, while the account had a balance of $8,670.34, the debtor took three cash advances totaling $1,403.50; that during the period from December 20, 1999, through January 11, 2000, the debtor made five purchases totaling $883.17, and took three cash advances totaling $904.50. The foregoing cash advances and purchases, together with accrued interest, totaled $3,191.17. These transactions were made through Account No. 4784–8080–0032–7957, which the debtor opened as a MasterCard credit card on May 7, 1992, with an approved line of revolving credit.

Although the defendant did not submit a response to the request for admissions, the plaintiff was well aware that the defendant denied the allegation that he did not intend to pay the credit card debt because the had already denied the allegation in his answer to the complaint. The plaintiffs filed their motions for summary judgment without providing any special notice to the *pro se* defendant regarding the possible effect of his failure to answer the motions.

## CONCLUSIONS OF LAW

■ To except credit card debt from discharge pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, the plaintiff must prove by a preponderance of the evidence

that the debtor made a knowingly-false representation with the intent to deceive; that the plaintiff actually and justifiably relied on the representation; and that the plaintiff sustained a loss as a proximate result of its reliance. *AT & T Universal Card Services v. Mercer (In re Mercer),* 246 F.3d 391, 403 (5th Cir.2001).

In *AT & T Universal Card Services Corp. v. Trivisani (In re Trivisani),* 225 B.R. 319 (Bankr.D.Md.1998), *aff'd by unpublished opinion sub. nom. In re Trivisani,* 210 F.3d 362 (4th Cir.2000), this Court (Mannes, C.J.) held dischargeable the credit card debt at issue because the debtor was found at all times to have had the subjective intention to repay the debt, despite his precarious financial condition. The debtor's lack of means was held not to negate his intent to repay the debt. 225 B.R. at 320. The decision in *Trivisani* was rendered after a trial on the merits.

Absent the admission for which the plaintiff contends in the instant case, the plaintiff had to prove by circumstantial evidence that the defendant possessed a specific intent not to repay the debt at the time the charges were incurred and cash advances were made. This is entirely ap-

propriate. The creditor always bears the burden of proving the nondischargeability of any given debt.

In his answer, the defendant denied having an intent not to repay the plaintiff. The complaint was at issue when the answer was filed and the plaintiffs were put on notice regarding the issue to be proven.

The granting of summary judgment is only appropriate if there is no "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56. In the instant case, there exists a genuine issue of material fact, namely whether the defendant intended to repay his debt to the plaintiff at the time charges were incurred and cash advances were made. This material fact became "at issue" when the debtor denied the allegation in his answer.

Federal Rule of Civil Procedure 36(a), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7036, provides that requests for admissions not responded to within 30 days after service are to be deemed as admitted.[3] The purpose of a request for

---

**3.** Federal Rule of Civil procedure 36 provides, as follows:

**Rule 36.  Requests for Admission**

(a) Request for Admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. Without leave of court or written stipulation, requests for admission may not be served before the time specified in Rule 26(d).

Each matter of which an admission is requested shall be separately set forth. The

matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering par-

admissions is to promote the efficiency of the administration of justice. Admissions save time and expense in the litigation of matters that are not in dispute. *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686 (2d Cir.1966); *Metropolitan Life Insurance Co. v. Carr*, 169 F.Supp. 377, 378 (D.Md. 1959). "Rule 36 was designed to eliminate the necessity of proving essentially undisputed and peripheral issues of fact." *Syracuse Broadcasting Corporation v. Newhouse*, 271 F.2d 910, 917 (2d Cir.1959). The matter that is the subject of this request for admission was clearly in dispute and central to the outcome of the instant suit.

■■■ A party's failure to respond to a request for admissions under Federal Rule of Civil Procedure 36 may result in a material fact being deemed admitted and subject the party to an adverse grant of summary judgment. *See Carney v. I.R.S. (In re Carney)*, 258 F.3d 415, 417–18 (5th Cir. 2001); *Gardner v. Borden, Inc.*, 110 F.R.D. 696, 697 (S.D.W.Va.1986); *Freed v.*

*Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D.Pa.1975). However, in the case of *U.S. v. Turk*, 139 F.R.D. 615, 24 Fed. R. Serv.3d 540 (D.Md.1991), District Judge Herbert F. Murray held that the court was not bound to deem as admitted unanswered requests for admissions by a *pro se* defendant, where to do so would be contrary to the interests of justice and unduly prejudice the defendant's rights. Judge Murray was properly "reluctant to grant summary judgment against a *pro se* defendant based solely upon his failure to comply with the discovery requirements of the Federal Rules of Civil Procedure." 139 F.R.D. at 618. In *Turk*, as in the instant suit, the defendant's lack of response was not frivolous, but rather the uninformed omission of a *pro se* defendant in a case in which the plaintiff was on notice of the defendant's position on the issue by reason of his answer. This is not to suggest that procedural rules do not apply to *pro se* defendants, but rather that "to conclusively find the facts central to this litigation against the defendant with-

---

ty may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it.

The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served. The court may, in lieu of these orders, determine that final disposition of

the request be made at a pre-trial conference or at a designated time prior to trial. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.
Fed.R.Civ.P. 36.

out giving him an opportunity to be heard would not further the interests of justice." *Id.* Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of *pro se* litigants to have their cases fairly judged on the merits.

Additionally, the Fourth Circuit has consistently required that a special notice be given to the *pro se* nonmovant regarding the requirement that a response be filed to a motion for summary judgment and the negative consequences of failing to do so. *Norman v. Taylor,* 25 F.3d 1259 (4th Cir. 1994); *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), *citing with approval Hudson v. Hardy,* 412 F.2d 1091, 1094 (D.C.Cir.1968), stressing "the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required." No such warning was rendered in this case, although the plaintiffs and their counsel were well aware that the defendant was not represented by counsel.

This Court's decision not to deem admitted the plaintiff's unanswered requests for admissions is not prejudicial to the right of the plaintiffs to prove their cases at trial. In these circumstances, it was appropriate to deny summary judgment to the plaintiffs and to consider the merits of the case after all the evidence was presented at trial.[4]

With respect to the allegation that the plaintiffs were prejudiced by the defendant's failure to respond to the plaintiffs' interrogatories, the Court notes the difference between contention interrogatories and identification interrogatories. Those unanswered interrogatories that sought the debtor's identification of witnesses and the acknowledgment of the authenticity of

certain documents resulted in the debtor being precluded from admitting documents at trial, calling any witness other than himself to testify on his behalf and obviated any objection by him as to the authenticity of the plaintiffs' documents. However, his failure to respond to the contention interrogatories did not preclude him from opposing the contentions of the plaintiffs of mixed fact and law which the defendant had already denied. As stated in an article on the subject:

Federal Rule of Civil Procedure 33 governs the use of interrogatories as a discovery device in federal courts. The purpose of interrogatories is to allow the parties to prepare for trial and inform the parties what evidence they must meet. There are basically two types of interrogatories: identification interrogatories and contention interrogatories. Identification interrogatories request the responding party to identify relevant documents and tangible objects or the identity of individuals having knowledge of facts relating to the suit. In contrast, contention interrogatories seek to discover the factual basis for the allegations raised in the complaint, answer or counterclaim. The purpose of contention interrogatories is also to determine the theory of a party's case. In the case of *In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328 (N.D.Cal.1985), the court identified four types of questions which could be categorized as contention interrogatories: first, a question which asks another party what it contends; second, a question which asks another party whether it makes a specified contention; third, a question asking a party to state all the facts or evidence upon which it bases a contention; and fourth, a question which

---

4. The plaintiffs complained at trial that the defendant had not responded to valid discovery requests, but the Court notes that the plaintiff never invoked the provisions of Federal Rule of Civil Procedure 37 to compel the defendant's responses.

**774**

asks the party to take a position and then to explain that position with respect to how the law applies to the facts or asks a party to articulate the legal basis or theory behind a specified contention.

Ian D. Johnston & Robert G. Johnston, *Contention Interrogatories in Federal Court,* 148 F.R.D. 441–48, July, 1993.

█ In conclusion, standing alone, the lack of ability to repay credit card debt is not sufficient evidence to support a finding of fraudulent intent or misrepresentation on the part of a debtor so as to render that debt nondischargeable. Without more, the plaintiff's claim in the instant cased amounts to a common, garden-variety debt arising as a breach of contract rather than as a debt sounding in tort based upon a fraudulent misrepresentation. *Trivisani,* 225 B.R. 319 (Bankr.D.Md.1998).

WHEREFORE, the instant motions for summary judgment will be DENIED, the complaint will be dismissed, and the subject debts will be determined to be dischargeable in bankruptcy after trial on the merits.

ORDER ACCORDINGLY.

*ORDER DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT, DISMISSING COMPLAINTS AND DECLARING DEBT TO BE DISCHARGEABLE*

For the reasons set forth in the memorandum opinion filed simultaneously herewith, the motions for summary judgment filed by the plaintiffs, Citibank (S.D.). N.A., and Universal Bank, N.A., are hereby DENIED; the instant adversary proceedings are hereby DISMISSED; and the instant debts are hereby declared to be DISCHARGEABLE.