In re Laura M. HENNING, Debtor.

MBNA America Bank, N.A., Plaintiff,

v.

Laura M. Henning, Defendant.

Bankruptcy No. HK 02–11862.
Adversary No. 03–88040.

United States Bankruptcy Court,
W.D. Michigan.

May 5, 2004.

Lori L. Purkey, Miller, Canfield, Paddock & Stone, PLC, Kalamazoo, Michigan, for Plaintiff.

Joy L. Foster, Walling & Foster, P.C., Battle Creek, Michigan, for Defendant.

## OPINION RE: ENTRY OF CONSENT JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

MBNA America Bank ("MBNA") has submitted for entry a proposed consent judgment in conjunction with a settlement reached between it and Laura M. Henning, the defendant in this adversary proceeding. The proposed judgment declares as non-dischargeable $4,500 of the pre-petition indebtedness owing by Ms. Henning to MBNA. I ordered the parties to appear before the court and show cause why the consent judgment should enter. For the reasons stated in this opinion, I have now signed the proposed judgment.

## BACKGROUND

On October 23, 2002, Laura and Ronald Henning filed a petition for relief under Chapter 7 of the Bankruptcy Code.[1] MBNA is a creditor of Ms. Henning. Ms. Henning had a revolving credit card account with MBNA. MBNA claimed that Ms. Henning owed it $22,510.22 with respect to this account as of the date of her petition.

On January 17, 2003, MBNA commenced its adversary proceeding to declare as non-dischargeable $9,650 of its claim against Ms. Henning pursuant to Section 523(a)(2)(A). That section provides that a debt arising from the extension of credit will be declared non-dischargeable to the extent the credit was obtained by "false pretenses, a false representation or actual fraud." *Id.*

MBNA's complaint included 17 separate numbered paragraphs. Each paragraph was only a sentence long. Five of these sentences identified the parties and this court's jurisdiction, three sentences set forth the history of Ms. Henning's account with MBNA, and two sentences stated the relief MBNA was requesting. The remaining eight sentences of the complaint set forth the basis upon which MBNA relied for the relief it was seeking:

\*    \*    \*    \*    \*    \*

9. Between 07/15/2002 and 08/07/2002 Defendant [Ms. Henning] accumulated $3,560.00 in retail charges.

10. Between 07/15/2002 and 08/07/2002 Defendant incurred $6,000.00 in cash advance and/or convenience check charges.

11. Defendant's debt is a "consumer debt", as defined by 11 U.S.C. § 101(a).

12. By obtaining and/or accepting an extension of credit from Plaintiff and incurring charges on this account, Defendant represented an intention to repay the amounts charged.

13. Plaintiff reasonably relied on the representations made by Defendant.

14. Defendant incurred the debts when Defendant had no ability or objective intent to repay them.

15. Defendant obtained credit extended from the Plaintiff by false pretenses, false representations and/or actual fraud.

\*    \*    \*    \*    \*    \*

MBNA's Complaint (Docket # 1).

Ms. Henning answered MBNA's complaint on February 18, 2003. She unequiv-

---

1. 11 U.S.C. § 522(b)(2)(B). The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1330.

Unless otherwise noted, all further statutory references are to the Bankruptcy Code.

ocally denied MBNA's allegation in paragraph 14 that she lacked the ability or objective intent to repay her obligations to MBNA and MBNA's allegation in paragraph 15 that she had obtained credit from MBNA by "false pretenses, false representations and/or actual fraud."

However, despite these denials, Ms. Henning reached a settlement with MBNA sometime around February 28, 2003. The settlement is set forth in a stipulation filed with the court on March 13, 2003. The settlement provided that only $4,500 of MBNA's claim would be declared non-dischargeable. It further provided that Ms. Henning could repay this non-dischargeable amount to MBNA in monthly installments of $100 each over 45 months without interest.

The settlement stipulation between MBNA and Ms. Henning also included a proposed consent judgment. The proposed judgment declared MBNA's claim to be non-dischargeable in the amount of $4,500. The purpose of the proposed judgment was to provide MBNA with a mechanism to enforce its settlement with Ms. Henning in the event she defaulted under the payment terms she had agreed upon.

On May 2, 2003, I ordered the parties to appear before me to explain why the proposed consent judgment should be entered against Ms. Henning. The hearing on that order was originally scheduled for June 3, 2003. However, it was adjourned to July 15, 2003 at the parties' request.

MBNA and Ms. Henning appeared at the July 15, 2003 hearing through their respective counsel. During the hearing, I raised the issue of whether Ms. Henning had used her MBNA credit card with the level of intent required by the Sixth Circuit to warrant a declaration of non-dischargeability pursuant to Section 523(a)(2)(A). In *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert),*

141 F.3d 277 (6th Cir.1998), a Chapter 7 debtor incurred over $11,000 in debt on two separate credit cards. Most of the debt was associated with cash advances received by the debtor to cover gambling losses. The Sixth Circuit determined that the debtor had made a promise to the credit card company that she would repay the amount advanced each time she used her card. However, the Sixth Circuit also concluded that her promise could not be construed as a false representation within the meaning of Section 523(a)(2)(A) unless the debtor subjectively intended not to repay the debt at the time the advance was requested. *Id.* at 281–82.

Ms. Henning's attorney indicated that she was familiar with the *Rembert* decision. However, she also indicated that she had not advised Ms. Henning that MBNA would be required to prove that she had actually intended to defraud MBNA with respect to the extensions of credit in order to secure the requested declaration of non-dischargeability against her.

I took the matter under advisement at the conclusion of the July 15, 2003 hearing. On September 30, 2003, MBNA filed a supplemental brief. Among other things, the September 30, 2003 brief included a proposed amended complaint. Paragraphs 7 through 20 of the proposed amended complaint set forth revised allegations upon which MBNA relied to support its contention that $9,650 of its claim against Ms. Henning should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A):

\*     \*     \*     \*     \*     \*

7. Defendant [Ms. Henning] utilized the line of credit, creating a balance due and owing on this account totaling $22,510.22, including interest, as of the date the bankruptcy petition was filed. Defen-

dant's debt is a "consumer debt", as defined by 11 U.S.C. § 101(a).

8. At the time of filing, the Defendant and co-filing spouse had $115,513.34 of unsecured debt, on 11 separate credit cards pursuant to Schedule F of Defendant's Petition.

9. At the time of the filing, the Defendant had two (2) outstanding student loans in the sum of $16,092.00 pursuant to Schedule E of Defendant's Petition.

10. At the time of filing, the Defendant and her co-filing spouse had a monthly net income of $3,152.13 and monthly expenses of $3,401.80 pursuant to Schedule [sic] I and J of Defendant's Petition.

11. At the time of filing, the Defendant and her co-filing spouse owned real property valued at $105,000.00, with a first mortgage in the sum of $100,640.00 pursuant to Schedule [sic] A and D of Defendant's Petition.

12. Commencing in January 2000 and continuing through October 23, 2002, the Defendant and her co-filing spouse reported significant decreases in income from employment pursuant to the Statement of Financial Affairs, No. 1 of Defendant's Petition as follows:

2000: $168,000.00

2001: $102,000.00

2002: $ 55,000.00

13. In a 3 week period, between July 15, 2002 and August 7, 2002, the Defendant began the withdrawal of a substantial amount of her remaining authorized credit limit by taking a $6,000 cash advance and accumulating $3,650.00 in retail charges while making minimal payments on said account. (See account statements attached hereto)[.]

14. Upon information and belief, no substantial payments were made on any of her 11 credit cards during the aforementioned period pursuant to the Statement of Financial Affairs, No. 3, of the Defendant's Petition.

15. Upon information and belief, the Defendant and her co-filing spouse lacked the equity in their real property to seek any financing to pay her credit cards pursuant to Schedule [sic] A and D of the Defendant's Petition.

16. At the time the Defendant incurred charges on the Account, Defendant was cognizant of the inability to repay the charges incurred on the revolving line of credit. The Defendant did not intend to repay the charges incurred on the line of credit.

17. Defendant had a specific intent to defraud Plaintiff by accepting the benefits of the cash advances and purchases without intending to repay the debts.

18. Defendant's actions constituted a material misrepresentation of facts, which were intended to be relief upon by Plaintiff, in making Defendant a loan. Defendant engaged in a pattern of credit card kiting whereby the Defendant obscured the inability to repay debts by incurring new credit card debt to temporarily pay down and then reborrow on older credit cards. Defendant also used these new credit cards in a kiting scheme to make minimum payments on an ever increasing number of credit cards by using new credit card debt to pay the minimum monthly payments.

19. Plaintiff relied upon Defendant's misrepresentations of repayment and was induced to lend money to Defendant by said misrepresentations. Plaintiff reasonably relied on the representations made by Defendant.

20. Defendant obtained money from Plaintiff through false prestense [sic] and false representations.

Proposed Amended Complaint, Exhibit to MBNA's September 30, 2003 Brief (Docket # 17).

MBNA's September 30, 2003 brief also included a supplemental declaration by Ms. Foster. Among other things, that declaration indicated that she had reviewed *In re Rembert* and that she had again recommended to Ms. Henning that she accept MBNA's settlement offer in light of the available facts.

### *JURISDICTION*

The court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and LBR 83.2 (W.D.Mich.). This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### *DISCUSSION*

■ MBNA protests that the court's intervention in the settlement reached by the parties is inappropriate. It argues that the court is interfering with the parties' right to resolve their differences amicably and to avoid the costs and risks inherently associated with litigation through judgment. It also complains that the court's intervention compels the parties to breach attorney-client confidences and to disclose information that either is protected as attorney work product or inadmissible under Rule 408 of the Federal Rules of Evidence.

MBNA's objection is misplaced. MBNA certainly had the right to negotiate a settlement with Ms. Henning without court interference. Indeed, MBNA could have negotiated a settlement with Ms. Henning without ever having commenced an adversary proceeding against her. However, MBNA did commence an adversary proceeding against Ms. Henning and MBNA now requests that the court enter a consent judgment against Ms. Henning in conjunction with that adversary proceeding. MBNA itself describes it as an "Order and Judgment of Nondischargeability." The text of the proposed judgment is:

> The Court has considered the pleadings and the Stipulation for Judgment [sic] executed by the parties. Final judgment is hereby entered ordering the sum of $4,500.00 to be nondischargeable pursuant to 11 U.S.C. Section 523(a)(2) as against Debtor, LAURA M. HENNING, and in favor of MBNA America Bank, N.A. The terms of the Stipulation for Judgment executed by the parties are incorporated herein by reference.

March 13, 2003 Stipulation of Nondischargeability and Payment Plan (emphasis in original) (Docket # 6).

In *In re Dalen*, 259 B.R. 586 (Bankr. W.D.Mich.2001), I had the opportunity to discuss the difference between a settlement reached between the parties and the entry of consent decree pursuant to that settlement.

> [T]here is a well developed body of Sixth Circuit case law concerning the process by which a court is to approve consent decrees. *See, e.g., Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983); *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013 (6th Cir.1994); *Stotts v. Memphis Fire Department*, 679 F.2d 541 (6th Cir.1982), *rev'd on other grounds*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). These cases offer considerable assistance in determining how a bankruptcy court should evaluate

a settlement agreement which has been presented to it by a trustee for approval.

Consent decrees are settlement agreements which are incorporated into a court order for purposes of enforcement. They often are the product of litigation brought to redress alleged employment discrimination. Parties are encouraged to enter into consent decrees as opposed to actually litigating employment discrimination actions because remediation is often more successful if it is the product of voluntary negotiation between the parties. *United States v. City of Miami,* 614 F.2d 1322, 1331–32 (5th Cir. 1980).

"A consent decree is essentially a settlement agreement subject to continued judicial policing." *Vukovich,* 720 F.2d at 920. It incorporates a voluntary settlement agreement which is governed by the rules of contract. In one sense, it is nothing more than documentation of the bargained for positions of the parties. *Id.*

The contractual aspect of a consent decree has caused courts to approach the approval of such decrees with caution.

> In what can be termed "ordinary litigation," that is, lawsuits brought by one private party against another private party that will not affect the rights of any other persons, settlement of the dispute is solely in the hands of the parties. If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved. As Judge Wyzanski has described this situation: "the traditional view is that the judge merely resolves issues submitted to him by the parties ... and stands indifferent when the parties, for whatever reason commends itself to them, choose to settle

a litigation." *Heddendorf v. Goldfine,* 167 F.Supp. 915, 926 (D.Mass.1958).

\*   \*   \*   \*   \*   \*

> "[A]n active role for the trial court in approving the a[sic] settlement is the exceptional situation, not the general rule."

*City of Miami,* 614 F.2d at 1330–31. In other words, a court, as a general rule, is to assume a laissez-faire attitude toward settlements reached between parties in a pending action. Taking such an approach promotes consistency since court intervention is seldom required if a dispute is settled by the parties prior to the commencement of a court proceeding. It makes little sense for a court to interpose its judgment concerning a settlement in an ordinary dispute after the commencement of an action if no such intervention is required by the court prior to the commencement of that action.

However, a consent decree, by its nature, is not simply a settlement between two parties. Rather, it is an order which implicitly, if not explicitly, approves a settlement which is incorporated into its provisions. Judicial approval of the parties' settlement "places the power and prestige of the court behind the compromise struck by the parties." *Vukovich,* 720 F.2d at 920.

> A consent decree, although founded on the agreement of the parties, is a judgment. It has the force of res judicata, protecting the parties from future litigation. It thus has greater finality than a compact. As a judgment, it may be enforced by judicial sanctions, including citation for contempt if it is violated.

\*   \*   \*   \*   \*   \*

The court must ... must not merely sign on the line provided by the par-

ties. Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval. As Professors Moore and Curier state:

[T]he judgment is not an inter partes contract; the court is not properly a recorder of contracts, but is an organ of government constituted to make judicial decisions and when it has rendered a consent judgment it has made an adjudication.

*United States v. City of Miami,* 664 F.2d 435, 439–41 (5th Cir.1981) (en banc concurring opinion) (footnotes and internal citations omitted).

Therefore, before a court gives its imprimatur to a settlement through an order or consent judgment, the court should have before it sufficient information to, at a minimum, ascertain that the settlement reached is not illegal, unconstitutional, or against public policy. "Judicial approval, therefore, may not be obtained for an agreement which is illegal, a product of collusion, or contrary to the public interest." *Vukovich,* 720 F.2d at 920. Approving a settlement without making such an inquiry unnecessarily places the judicial system at risk of embarrassment or of unduly burdening itself with administrative tasks.

If a consent decree provided that a violator could be punished by having his ears cut off, the judge could not sign it; nor could he if the decree placed upon him duties either inappropriate to the judicial role or excessively time-consuming in relation to his other responsibilities.

*Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985).

*Id.* at 604–605.

■ An individual debtor who files a Chapter 7 proceeding is entitled to a discharge of all debts that arose before the entry of the Chapter 7 order for relief. 11 U.S.C. § 727(b). The debtor's discharge lies at the very heart of a debtor's "fresh start." I am obligated under Section 727(a) to grant a Chapter 7 debtor's discharge unless one or more of the exceptions set forth in that subsection exists.

■ A claim against the debtor may still be exempt from the discharge granted pursuant to Section 727(a) if the claim falls within one of the categories described in Section 523(a). Some of the Section 523(a) exceptions to discharge are automatic. *See, e.g.,* Sections 523(a)(1) and (a)(5). However, other exceptions, including the exception for the extension of credit based upon a false representation, require that the complainant secure a judgment of non-dischargeability through an adversary proceeding. 11 U.S.C. § 541(a)(1); Fed. R.Bankr.P. 4007 and 7001.[2]

■ It is within this context, then, that I must consider MBNA's request to enter a judgment of non-dischargeability against Ms. Henning. I have no compunction whatsoever under circumstances such as these to ask the type of questions that I did of both MBNA and Ms. Henning. I do not want to discourage the amicable resolution of disputes between parties who have matters pending before me. However, it is also my responsibility to ensure

---

**2.** A creditor whose claim is automatically excepted from discharge is not required to file an adversary proceeding. For example, if a debtor raises in a state court proceeding his prior bankruptcy proceeding as a defense to his continuing responsibility to pay child support obligations, the creditor may simply refer to Section 523(a)(5). However, a creditor may still procure a declaration from the bankruptcy court that the support obligation is non-dischargeable if the creditor so desires. That declaration would be in the form of a judgment entered in connection with an adversary proceeding against the debtor. *Id.*

that the judicial process is not being abused through the utilization of consent judgments or stipulated orders. This obligation is particularly compelling when the subject matter of the settlement between the parties an issue as important as that of a debtor's discharge in bankruptcy.

I am at a loss why MBNA believes that the attorney-client privilege or attorney work product has been compromised because of the inquiries I have made. After all, it is MBNA which is seeking the entry of a judgment against Ms. Henning. Neither MBNA nor Ms. Henning was under any obligation to answer the questions I put to them. Indeed, I made it clear to Ms. Henning's attorney in my questioning of her that it was perfectly acceptable to assert the attorney-client privilege as a response to any question that might require her to divulge a client confidence. Moreover, for the most part, the questions I asked related to the facts and law upon which MBNA based its non-dischargeability claim. Had MBNA not settled, but instead gone to trial, it would have had to present at a very minimum a sufficient *prima facie* case to warrant entry of a judgment against Ms. Henning pursuant to Section 523(a)(2)(A). In effect, what I asked of MBNA in conjunction with its request to enter the consent judgment is nothing more than an abbreviated version of what it would have had to disclose had it gone to trial.

I do not have either the duty or the discretion to approve the agreement reached between MBNA and Ms. Henning. Each is free to agree upon a resolution of their differences short of trial. Indeed, the court encourages settlement in order to reduce the demand upon limited judicial resources. However, even the most liberal approach to dispute resolution must have parameters. It is one thing to permit the entry of a consent judgment with respect to a dispute where there is a legitimate disagreement between the parties. However, it is entirely another when even the pleadings underlying the proposed consent judgment do not appear to support the relief requested.

MBNA's original complaint in this adversary proceeding is deficient. MBNA's theory for relief under Section 523(a)(2)(A) is that Ms. Henning fraudulently procured credit from MBNA when she used her credit card because she had no intention of paying back the obligation each time credit was extended between the dates of July 15, 2002 and August 7, 2002. However, Paragraph 14 of MBNA's original complaint alleges only that "Defendant [Ms. Henning] incurred the debts when Defendant had no ability to repay them." In other words, MBNA's original complaint ignores *Rembert* and its requirement that subjective intent to defraud be established. Moreover, MBNA's original complaint offered no factual allegation(s) to support a finding of actual fraud based upon the "totality of circumstances" discussed in footnote 3 of the *Rembert* opinion. The absence of such allegations is particularly glaring in light of MBNA's obligation under Fed.R.Bankr.P. 7009(b) to plead the circumstances constituting the alleged fraud "with particularity."

The dynamics of a Chapter 7 proceeding offer unscrupulous creditors the opportunity to abuse the system. Defending a non-dischargeability action can be expensive and Chapter 7 debtors are often not in a position to bear that expense. Obviously, every dollar that a Chapter 7 debtor must spend from his post-petition earnings or his exempt assets is a dollar diverted from the Chapter 7 debtor's fresh start.

■ I have no reason to believe that MBNA's motivation in commencing the Section 523(a)(2)(A) action against Ms. Henning was in bad faith. However, the

vagueness of its pleadings certainly did not rule out the possibility. Consequently, it was appropriate for me to require the parties to appear before me to address my concerns about the entry of the proposed consent judgment. Again, it is not my place to impose my judgment as to the proper outcome of a non-dischargeability action when the parties themselves have reached their own agreement as to the appropriate result. However, it is my duty to ensure that the integrity of the judicial system is not abused. A creditor may not take advantage of a Chapter 7 debtor's inability to afford the defense of a non-dischargeability action to have declared as non-dischargeable a debt that clearly does not fall within any of the exceptions described in Section 523(a).

With this in mind, I am now satisfied that the entry of the proposed consent judgment in this adversary proceeding is appropriate. The amended complaint included with MBNA's supplementary brief addresses the questions raised by the complaint currently filed. The complaint, even as amended, need not establish that MBNA has an ironclad claim against Ms. Henning pursuant to Section 523(a)(2)(A). All that is required is that the allegations be of sufficient detail to establish that the plaintiff has a cognizable legal theory upon which to assert a claim of non-dischargeability and that there are facts that would support that theory. MBNA's proposed amended complaint meets this requirement. Moreover, Ms. Henning's attorney has filed a second declaration with the court that states that she has now discussed with Ms. Henning the Section 523(a)(2)(A) standards set forth in *Rembert* and that Ms. Henning has since reaffirmed her decision to accept the settlement reached with MBNA. This declaration alleviates any lingering concern that MBNA might be taking advantage of the judicial system by bootstrapping a

dischargeable debt into a Section 523(a)(2)(A) judgment of non-dischargeability.

Therefore, for the reasons stated herein, the proposed consent judgment submitted with the March 13, 2003 settlement stipulation will enter.