NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0780n.06
Filed: September 7, 2005
File Name: 05a0780n.06
Filed: September 7, 2005

No. 04-5753

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: JOHNNY A. CRIM, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| THE PEOPLES STATE BANK, now known as CITIZENS UNION BANK, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNY A. CRIM, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Before: SILER and GIBBONS, Circuit Judges; STAFFORD District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Peoples State Bank (now Citizens Union Bank) ("Bank") brought an action against debtor Johnny Crim under 11 U.S.C. § 523(a)(2)(A) seeking an exception to the discharge of a particular debt. The bankruptcy court and the district court entered judgment in favor of Crim. For the reasons set forth below, we affirm the judgment of the bankruptcy court.

---

[*]The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

1

I.

Debtors Johnny Crim, James Milton Conkwright, and Ghassem Oshrieh were associates in a real estate development and home building business, Double J Construction. The Bank provided financing for the business on multiple occasions. In January 2000, Crim, Conkwright, and Oshrieh approached the Bank to obtain a loan for the purpose of purchasing 26 acres of unimproved land. A loan of $49,000.00 was approved and was secured by the 26 acres of land. In February 2000, they obtained a second loan for the purpose of building a new home on that property. The Bank extended the financing in the original loan to $92,000.00. In April 2000, they obtained a third loan for $25,000.000 to purchase a backhoe and work truck.

In October 2000, Crim, Conkwright, and Oshrieh approached Theresa Kinslow, a loan officer at the Bank, to obtain a new loan for the construction of a second house on the development property. They presented a set of plans to Kinslow, an appraisal was made, and the Bank approved the loan entitled "Interim Construction Loan" on October 25, 2000. The amount of the loan was $100,350.00. Crim made a number of withdrawals from the loan funds from October 31, 2000 until February 14, 2001, totaling over $99,000.00.[1] The draws were initiated by Crim's contacting a loan officer at the Bank via phone and requesting a draw of a particular amount. The loan officer then checked the computer system to verify that the funds were available. Because the funds were

---

[1]There were withdrawals of $10,000.00 each on October 31, 2000, November 13, 2000, November 27, 2000, January 12, 2001, January 24, 2001, February 5, 2001, and February 14, 2001. There was also a withdrawal of $20,000.00 on December 4, 2000, and $9,000.00 on December 20, 2000.

available, the loan officer processed the draw. Kinslow did not personally authorize the draws, nor was any inquiry made into the purpose of the draws or construction progress on the second house.

After the last withdrawal, Kinslow determined that a second house was not being built with the funds. The real estate venture ultimately proved unsuccessful, and Crim, Conkwright, and Oshrieh each filed for Chapter 7 bankruptcy protection in November 2001. All of the aforementioned notes have either been paid or waived by agreement, with the exception of the October 2000 loan. The Bank brought a complaint seeking an order that would hold the proceeds from the October 2000 loan to be a non-dischargeable debt. The Bank entered into settlement agreements with Conkwright and Oshrieh regarding the October 2000 loan. Therefore, the bankruptcy court only heard evidence regarding Crim.

When questioned about his intentions regarding the loan at issue, Crim testified that he fully intended to build the second house. Conkwright also testified that the intent was to use the money from the loan to build the second house, that he understood that the sole purpose of the loan was for construction of the second house, and that he did not change his mind about building the house until about forty days after the loan was obtained. Conkwright also stated that he believed Crim intended to build the house. Kinslow testified, "I believe their intent, at that time, was to build a house. . . . [T]hey never made any mention of using this loan as a line of credit. Nor did I." As the bankruptcy court stated: "When asked if she believed that the Defendant intended to borrow the money, build a second home, sell the house, make a profit and pay back the Bank, Ms. Kinslow again answered in the affirmative."

3

The bankruptcy court held that the objection to discharge by the Bank failed based on Crim's testimony, the statements of other witnesses, and the entire record in the case. The district court affirmed the bankruptcy court. The Bank filed its notice of appeal to this court on June 23, 2004.

II.

"In appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law." *Am. HomePatient, Inc. v. Official Comm. of Unsecured Creditors, et al. (In re Am. HomePatient)*, Nos. 03-6500, 03-6501, 2005 WL 1949548, at *2 (6th Cir. Aug. 16, 2005) (quoting *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 468 (6th Cir. 1998)).

The bankruptcy code provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A). This court held in *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-281 (6th Cir. 1998):

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Id*. (footnote omitted).

The Bank asserts that three of the bankruptcy court's factual findings are clearly erroneous. The Bank first argues that the bankruptcy court erred in finding that Crim did not obtain money

4

through a material misrepresentation that he knew was false or made with gross recklessness as to its truth. The Bank also asserts that the bankruptcy court's conclusion that Crim made preparations for the construction of the second home was clearly erroneous. Finally, the Bank asserts that it was clear error for the bankruptcy court to find that Crim did not intend to deceive the creditor.

The Bank asserts that the bankruptcy court clearly erred in regard to its finding that Crim did not obtain money through a material misrepresentation that he knew was false or made with gross recklessness as to its truth because his intent was "to remain in business so that he could get away from his current employment." Put another way, the Bank asserts that Crim did not withdraw the funds to build the house, but rather to keep his company afloat. The Bank emphasizes that, though Crim was aware that the loan's purpose was construction of the second house, there was no real progress made on construction of the house at the time all of the loan principal had been withdrawn. The bank's argument overlooks the proof in the record that Crim did in fact intend to build the second house at the time the loan was made and asks us only to focus on the time period during which draws were made and the actual building of the second house became less likely. Whatever the merit of this argument might be in a typical construction loan situation, with progress inspections and draws dependent on progress, the argument fails here. Crim's affirmative representations in this case were all made at the time the loan was procured, and any omissions at the time the draws were obtained were apparently not material to the bank, given the approval process. Therefore, there is no error in the bankruptcy court's finding that Crim did not obtain money through a material misrepresentation that he knew was false or made with gross recklessness as to its truth.

The bankruptcy court likewise did not err in finding that the debtors made preparations for the construction of the second house and that those preparations negated intent to defraud the Bank.

5

The Bank stresses that any work done on or for the second house was solely to sell the first house. The bankruptcy court found that the ground for the second house was prepared, a driveway was dug, and windows were ordered and paid for. The Bank asserts that the ground for the second house was cleared and the driveway cut because a bulldozer was already on site due to construction of the first house and it would be cheaper to have the bulldozing work done for the second house at that time. The Bank also argues that "it simply does not make sense that windows would be purchased when there was no other fabrication on the lot." Despite the Bank's argument, the finding by the bankruptcy court that Crim and the other debtors performed work and ordered materials in preparation for construction of the second house was not clearly erroneous.

Finally, the bankruptcy court did not err in finding that Crim did not intend to deceive the Bank. Essentially, the Bank's argument is that Crim made draws against a line of credit knowing that he had no ability to repay. The Bank also states, "Crim withdrew funds to pay expenses incurred in other projects, including the first house financed by the Bank, as well as to cover general business expenses, and to make payments to himself." The bankruptcy court considered all of the relevant facts and circumstances including the testimony of Crim, Conkwright, and Kinslow and the preliminary work done on the second house and concluded that Crim did not intend to deceive the Bank. This finding is not clearly erroneous.

Crim concedes that the Bank is correct in its assertion that the interest payments totaling $13,000.00 were not interest on the loan in question. Crim argues that the fact that any payments were made, regardless of which loan they were applied to, negates any fraudulent intention. There is no merit to Crim's argument that the erroneous finding of fact by the bankruptcy court should work in his favor.

6

However, the Bank's argument that the "legal conclusion of the Bankruptcy Court, which was affirmed by the District Court, that the Defendant did not intend to defraud the Creditor is based in part upon a clearly erroneous finding of fact that the Debtors made over $13,000.00 in interest payments on the loan at issue, which should be set aside" also lacks merit. Setting aside this erroneous factual finding does not alter the result in this case.

III.

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.